STATE of Missouri, Respondent,

v.

Richard SANDERS, Appellant.

Richard SANDERS, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 53783, 61651.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 10, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Dec. 16, 1992.

John Klosterman, St. Louis, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

CRANDALL, Presiding Judge.

Defendant, Richard Sanders, appeals from a judgment of conviction for first degree murder and a sentence as a prior, persistent and class X offender of life imprisonment without eligibility for probation or parole. The state had sought the death penalty. Defendant also appeals from the denial of his Rule 29.15 motion after an evidentiary hearing. We reverse defendant's judgment of conviction and remand for a new trial. In view of our resolution of defendant's direct appeal, we dismiss defendant's appeal from the denial of his Rule 29.15 motion as moot.

This case arises from the shooting death of the victim, an employee of her family's jewelry store in the City of St. Louis. Defendant and two codefendants, James Dale Montgomery (Montgomery) and Antonio Veal (Veal), participated in the crime. After the victim arrived at the store, Veal solicited the assistance of defendant's half-sister, Karen Luke (Luke), and defendant's paramour, Donna Shinault (Shinault), to divert the victim's attention while defendant and Montgomery gained access to the store through the back of the building. Veal then returned to the area, remaining in defendant's car as a lookout.

While Shinault and Luke were posing as "customers," two women, Charlotte Drier (Drier) and Delane Burnett (Burnett), entered the store. Shortly thereafter Shinault and Luke left. Then, while appraising a ring for Drier, the victim heard a noise and walked towards the store's back room. Burnett saw a hand holding a gun "pop out" and the trigger being pulled. The gun was fired and the victim sustained a bullet wound to her chest. When asked by Burnett whether she saw what the assailant looked like, the victim replied "ski mask." The victim later died at the scene as a result of the bullet wound.

Police focused their investigation on defendant, because his car was identified as being in the area at the time of the killing. Three days after the murder, defendant voluntarily appeared at the police station after being advised by his relatives to contact the police.

Defendant first denied any involvement in the shooting. When confronted by statements made to the police by Shinault and Luke, however, defendant implicated Veal and Montgomery in the robbery, claiming they had borrowed defendant's car. Later, defendant again changed his story and, in a videotaped statement, claimed he had remained in his car while Veal and Montgomery broke into the back of the store. Defendant stated further that Montgomery admitted to shooting the victim.

Montgomery and Veal were arrested later that day. Both codefendants gave statements to the police, and were given the opportunity to view defendant's video-taped statement. Defendant then made a second videotaped statement after talking with his codefendants. In this confession, defendant admitted to shooting the victim, but claimed that it was accidental.

The weapon used in the shooting was cut into pieces by defendant and his brother-in-law, Bruce Feltner (Feltner), and was never recovered. Prior to destroying the gun, defendant admitted to Feltner that "he had shot the lady." Also, in a search of Feltner's house, a ski mask was seized.

Defendant first contends the trial court erred in permitting the codefendant, Montgomery, to invoke his privilege against self-incrimination, U.S. Const. amend. V, and refuse to testify when called as a witness on behalf of defendant. Defendant argues that Montgomery waived the privilege when, prior to defendant's trial, he entered a plea of guilty to murder in the second degree, § 565.012, RSMo (1986)[1], and was sentenced to life imprisonment.

In proceedings in chambers, defense counsel gave the following reasons for seeking Montgomery's testimony:

.... To elicit certain information that occurred at the scene of the offense. I would question him about the offense.

\* \* \* \* \* \*

I want the jury to see that he exists and that I can ask him some questions about what his participation was. Yes I do [want to ask him who the shooter was].

\* \* \* \* \* \*

I want him to testify to what he was wearing. I want him to describe the weapon. I want to know whether or not there was another weapon there. I want to know about whether—where he got that weapon. I want to know whose idea it was to go to the jewelry store. I want to know who planned it, whose idea it was. I want to question him about everything that came down.

\* \* \* \* \* \*

1. All further statutory references are to RSMo (1986).

He can assert the Fifth [Amendment] on that issue, [whether he had a gun other than the gun that the defendant had,] but I think I should be allowed to question him about the factual terms of this event, of what happened at [the jewelry store]. I'm not going on a fishing expedition.

Thereafter a hearing was held on the matter out of the hearing of the jury. Defendant called Montgomery to the stand, who, following advice of his counsel, invoked the Fifth Amendment to every question asked, each of which pertained to entry of his guilty plea and his involvement with defendant and Veal on the day of the shooting.

Defense counsel then made a record of additional questions she would ask Montgomery were he to be compelled to testify:

Did Mr. Sanders indeed have the weapon[?] Was there another weapon involved[?] What color jacket was he wearing[?] Whose plan was it to do this[?] Was Antonio Veal outside the entire time[?] Was he inside the entire time[?] What did he see happen between Richard Sanders and [the victim?]

I understand that he has already said that he [Sanders] was the shooter in his plea of guilty.

\* \* \* \* \* \*

And I am fully aware if he gets on the stand he will so testify. That issue is a matter of credibility of the witnesses for the Jury to determine. I would not expect him to testify any differently ... Additional questions I would ask. When was this [robbery or burglary] discussed[?] Was it discussed the night before as seems to be the testimony of Mr. Veal on March 10th[?] Who was present for that discussion[?] How did they know about this jewelry store[?] The people that were involved with planning the robbery or burglary[?] What was Mr. Veal's entire role in the offense[?] What was Dale Montgomery's entire role in the offense[?] What did he do personally[?] What did he see my client do[?]

\* \* \* \* \* \*

The trial court then sustained Montgomery's blanket refusal to answer any questions regarding the crime to which he had earlier pleaded guilty and been sentenced.

The Fifth Amendment protects an individual from being compelled to provide testimonial evidence against himself which may then be used to prosecute him. Article I, section 19 of the Missouri Constitution similarly secures the privilege against self-incrimination, and has been interpreted consistently with the Fifth Amendment privilege. *State ex rel. Munn v. McKelvey*, 733 S.W.2d 765, 767 (Mo. banc 1987).

A witness validly exercises the privilege where an answer to the question propounded subjects the witness to a real danger of further incrimination. *See Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). Resolution as to whether a claim of privilege is proper rests within the sound judgment of the trial court. *State v. Loggins*, 698 S.W.2d 915, 918 (Mo.App.1985).

When there has been no waiver of the privilege, a blanket invocation of the right by a witness is routinely upheld by the trial court. *See, e.g., State v. Fitzgerald*, 781 S.W.2d 174, 185 (Mo.App.1989), denial of habeas corpus aff'd 963 F.2d 1062 (8th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 266, 121 L.Ed.2d 195 (1992); *Loggins*, 698 S.W.2d at 918; *State v. Berry*, 658 S.W.2d 476, 479 (Mo.App.1983); *State v. Jackson*, 659 S.W.2d 12, 14 (Mo.App.1983). Yet a valid claim of privilege can be waived. *Rogers v. United States*, 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951). The focus in this case, therefore, is whether Montgomery waived his privilege against self-incrimination and, if so, the nature and extent of that waiver.

We begin with the principle that a knowing and voluntary guilty plea waives the protection against compelled self-incrimination, *Griffith v. Wyrick*, 527 F.2d 109, 112 (8th Cir.1975) (*citing McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969)), as the witness "can no longer be incriminated by his testimony about said crime." *Reina v. United States*, 364 U.S. 507, 513, 81 S.Ct.

260, 264, 5 L.Ed.2d 249 (1960); *Robinson v. State,* 491 S.W.2d 314, 315 (Mo.1973). Accordingly, a plea of guilty waives the privilege as to the details of the crime to which the witness was convicted.[2]

■ Based upon the foregoing, it is apparent that a waiver of the privilege may be either complete or it may be partial, dependent upon the underlying facts divulged or admitted tending to reveal or substantiate prior crimes. Thus, a witness may lose the protection of the Fifth Amendment as to some subsequent questions but not others. *See* Leslie W. Abramson, Witness Waiver of the Fifth Amendment Privilege: A New Look At An Old Problem, 41 Okl.L.Rev. 235, 244 (1988).

■ In addition, although a party may not call a witness to testify solely for the purpose of having that witness invoke the privilege, *State v. Sidebottom,* 753 S.W.2d 915, 922 (Mo. banc 1988), *cert. denied,* 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988), the court may require the witness to take the stand where "there is a reasonable expectation that the witness will provide some legitimate testimony in addition to invoking his privilege against self-incrimination ..." *Id.* In fact, "the trial judge has a duty to determine whether a narrower privilege would suffice to protect the witness from danger while permitting the defendant to elicit desired testimony." *United States v. Thornton,* 733 F.2d 121, 125 (D.C.Cir.1984) (citations omitted). Furthermore, reversible error does not result from requiring the witness to claim the Fifth Amendment in the jury's presence. *Namet v. United States,* 373 U.S. 179, 187–189, 83 S.Ct. 1151, 1155–1156, 10 L.Ed.2d 278 (1963); *Sidebottom,* 753 S.W.2d at 922.

■ The state cites to this court cases upholding an accomplice's blanket invocation of the Fifth Amendment. *See State v. Wright,* 582 S.W.2d 275, 283 (Mo. banc 1979); *Loggins,* 698 S.W.2d at 918; *Jackson,* 659 S.W.2d at 14. One factor distinguishes these cases from the one at hand:

Montgomery had pleaded guilty and been sentenced to the crime in which the details thereof formed the subject matter of defendant's inquiry. Thus the situation here presented does not fall within the rule providing greater protection for witnesses, as Montgomery waived his privilege against compelled self-incrimination as to the particulars of the murder. *Robinson,* 491 S.W.2d at 315. *See McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969).

We recognize as well that had Montgomery been compelled to testify and the questioning had touched on collateral matters of an incriminating nature, the trial court could then have ruled on the relevancy of the questions and whether the witness was entitled to exercise the privilege in response to the questions. Nonetheless, defendant's Sixth Amendment right to compulsory process and the Fourteenth Amendment's Due Process Clause necessitate that the witness be compelled to testify and give answers to questions to which the waiver applies. *State v. Hill,* 817 S.W.2d 584, 587 (Mo.App.1991). *See Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). We therefore hold the trial court erred in upholding Montgomery's blanket invocation of the Fifth Amendment privilege against self-incrimination.

■ Next we consider whether the erroneous exclusion of defense evidence constitutes reversible error. *State v. Bashe,* 657 S.W.2d 321, 325 (Mo.App.1983). Defendant's theory of the case, among other theories, was that if he was guilty of any crime it was murder in the second degree—i.e., a death occurring during the commission of a felony, § 565.021.1(2), versus knowingly causing the victim's death after deliberation, § 565.020.1. Montgomery was an eyewitness and participant in the crime. He possessed knowledge as to the details of the incident. Certainly, his testimony could be relevant to the critical element of deliberation necessary for a first

---

**2.** Also, the possibility that the witness might perjure himself if compelled to testify on behalf of defendant is not a proper basis for invocation of an otherwise invalid claim of privilege. *State v. Benson,* 633 S.W.2d 200, 202 (Mo.App.1982).

degree murder conviction. *See State v. Turner*, 623 S.W.2d 4, 7 (Mo. banc 1981), *cert. denied*, 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982) (deliberation may be proved by indirect evidence and inferences reasonably drawn from all the circumstances attendant to the killing). Conceding the credibility problems with the testimony of a convicted codefendant, we still cannot say with any certainty that defendant was not prejudiced by his inability to compel Montgomery's testimony. Accordingly, defendant's first point is granted.

We next address the merits of some of defendant's remaining points because they may recur upon retrial. Defendant contends the trial court erroneously admitted evidence regarding his uncharged escape from the City of St. Louis jail, two and one-half months after his arrest in connection with the murder. This evidence included (1) testimony from two police officers pertaining to the details of defendant's escape from and subsequent return to custody, and (2) testimony of another officer as to defendant's statement following his re-arrest, whereby defendant claimed he would escape again because it was easy, that " '[i]t's simple.' "

■ Evidence of escape is admissible as bearing on defendant's consciousness of guilt as to pending charges. *State v. Hughes*, 596 S.W.2d 723, 729 (Mo. banc 1980). Defendant seeks to avoid the application of this principle because he conceded participation in the "burglary." This argument is without merit, as the hypothesis of consciousness of guilt arising from the escape runs to the particular charge pending at the time of the escape. *See State v. Meeks*, 659 S.W.2d 306, 307 (Mo.App.1983). Defendant did not, however, concede guilt to the first degree murder charge. Nor is it of any consequence that evidence of escape may constitute a separate crime chargeable to the accused. *State v. Holt*, 465 S.W.2d 602, 607 (Mo.1971); *State v. Scott*, 687 S.W.2d 592, 593 (Mo.App.1985). Defendant's point is denied.

■ Defendant next challenges the trial court's failure to suppress defendant's second videotaped statement. He contends that the confession was rendered involuntary by psychological coercion resulting from police action occurring when defendant was placed in the same room with two of his codefendants and admonished by police to get their stories straight.

From our review of the entire record, we conclude that there was substantial evidence from which the trial court and the jury could conclude that defendant's confession was voluntarily made. No jurisprudential purpose would be served by a written opinion on this point. Defendant's point is denied. Rule 30.25(b).

■ Defendant next contends, and the state concedes, that the trial court erred in sentencing defendant as a class X offender under § 558.019.2. The statute became effective January 1, 1987. The crime for which defendant was convicted occurred March 11, 1986. It is clear that application of the statute violates the United States Constitution, article I, § 9, clause 3, prohibiting ex post facto laws. *State v. Hillis*, 748 S.W.2d 694, 697 (Mo.App.1988). Although the trial error may not be prejudicial as to defendant's present sentence, the issue could arise should defendant be convicted of a lesser degree of homicide on retrial. Defendant's point is granted.

The judgment of conviction of defendant for murder in the first degree is reversed and the cause is remanded for a new trial. In view of our holding, defendant's appeal from the denial of his Rule 29.15 motion is rendered moot.

KAROHL, C.J., and GRIMM, J., concur.