STATE of Missouri, Respondent,

v.

Jack L. BOOTH, Appellant.

No. 22763.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 24, 2000.

Craig A. Johnston, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Catherine Chatman, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

A jury found Jack Lynn Booth ("Defendant") guilty of the Class B felony of possession of a controlled substance with intent to distribute, section 195.211, RSMo 1994. In keeping with the jury recommendation, Defendant was sentenced to eight years imprisonment. Defendant Appeals.

In his first point, Defendant posits trial court error in "overruling [Defendant's] motions for judgment of acquittal and in sentencing him upon his conviction ... because such rulings deprived [Defendant] of his right to due process under the United States Constitution, 5 th and 14 th Amendments, and the Missouri Constitu-

tion, Article I, § 10...." Defendant complains that the State did not present sufficient evidence to prove beyond a reasonable doubt "that [Defendant] consciously and intentionally possessed eight plastic baggies of methamphetamine ...; that he had an awareness of the drug's presence and nature; or that the drug was under his conscious control...." In his second point, Defendant asseverates that the trial court committed plain error in allowing a prospective defense witness, Arlin Graves, to invoke his privilege against self-incrimination and not testify "in that Graves' proffered testimony was not incriminating ... [and] there was no real danger of incrimination; the court did not determine whether a narrower privilege would suffice to protect Graves ...; and Graves waived his [privilege against] self-incrimination by telling [Defense Counsel] he had seen [a third party] in possession of the methamphetamine in question...."

"In determining the sufficiency of the evidence, all evidence and inferences reasonably drawn from the evidence are viewed in the light most favorable to the verdict, and contrary evidence and inferences are disregarded." *State v. Powell*, 973 S.W.2d 556, 558 (Mo.App.1998). "Review of the sufficiency of the evidence is limited to determination of whether the evidence was sufficient for reasonable persons to have found the defendant guilty as charged beyond a reasonable doubt." *Id.*

Viewing the evidence in such a manner, we find that at or about 11:35 p.m. the evening of March 26, 1997, Officer Darren Wilkins of the Springfield Police Department observed a pick-up truck traveling north on Kansas Expressway in Springfield with it's reverse lights illuminated. Officer Wilkins pulled the vehicle over around the 2800 block of Kansas Expressway. In the pick-up were two men: Defendant, who was driving, and a passenger, James Koonce. Officer Wilkins approached the vehicle and noticed a strong odor of ether. The officer also noticed a "boot knife" above the rear view mirror, and asked the two men to step out of the truck for safety reasons. Officer Wilkins asked Defendant for his driver's license and Defendant informed the officer that it was revoked. Officer Wilkins confirmed, through the dispatch center, that the license was indeed revoked. Officer Wilkins then placed Defendant under arrest and searched him. Pursuant to the search, the officer found a syringe, two condoms, some "Zigzag" rolling papers, a small pair of pliers, a pocket knife and a "little weight," in Defendant's left jacket pocket.[1]

During the traffic stop, Officer Wilkins was backed-up by Officer Darren Whisnant. Officer Whisnant went to the passenger side of the vehicle while Officer Wilkins was with the driver, and conducted a pat down search of Koonce. During the search, Koonce dropped a fifty-dollar bill. While looking down at the bill, Officer Whisnant observed a small baggie of white powder on the ground. Whisnant arrested and handcuffed Koonce. The powder was later determined to be methamphetamine.

A canine officer, Phillip Yarnell, was contacted and responded to the scene with his dog. The dog showed a "positive hit" on the left side of the pickup truck. A search uncovered a small glass jar wrapped in black tape located in the truck's toolbox that spanned the width of the truck bed directly behind the cab. The jar was located in the left, or driver's, side of the toolbox. Inside the jar were eight individually wrapped plastic baggies, filled with what was later determined to be a total of 22.56 grams of methamphetamine. The search also revealed a green canvas bag containing the following items: pipes; a "nursing drug handbook"; and a small box containing rolling papers, a plas-

---

1. Officer Wilkins testified that methamphetamine "can be ingested with a syringe" and that weights of the type found in Defendant's pocket are often "used to calibrate or measure out different weights of controlled substances."

tic rolling device, a "roach" holder, and a "small aluminum weight."

Later in the evening, Defendant waived his Miranda rights and told Officer Wilkins that the pick-up truck was his but that the license plates were not registered in his name because his license was revoked. Defendant also showed Officer Wilkins the title to the pick-up (Defendant had the title in his wallet) to show that the title had been signed over to Defendant.

Also later that evening, Officer Whisnant conducted a further search of Koonce at the Springfield City Jail. During the search the officer located two additional baggies containing a total of 1.59 grams of methamphetamine and another baggie containing eight pills.

At trial, the trial court overruled Defendant's motion for judgment of acquittal at the close of all of the evidence. The trial court also denied Defendant's motion for new trial.

I.

As noted above, Defendant complains in his first point that the State did not present sufficient evidence to prove beyond a reasonable doubt "that [Defendant] consciously and intentionally possessed eight plastic baggies of methamphetamine ...; that he had an awareness of the drug's presence and nature; or that the drug was under his conscious control...."

■■■ "To sustain a conviction for possession of a controlled substance with or without intent to distribute, the State must prove (1) conscious and intentional possession of the substance, either actual or constructive, and (2) awareness of the presence and nature of this substance." *Powell,* 973 S.W.2d at 558. "Both possession and knowledge may be proved by circumstantial evidence." *State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992). "The State is not required to show actual, physical possession of the substance to establish possession, but may show con-

structive possession by circumstantial evidence." *Powell,* 973 S.W.2d at 558.

A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it.

§ 195.010(33), RSMo 1994. "A defendant who has exclusive control of property is deemed to have possession and control of any substance found on the property." *State v. Yahne,* 943 S.W.2d 741, 745 (Mo. App.1997). However, "[p]ossession without knowledge of such possession is not possession in the legal sense of that word." *State v. Mercado,* 887 S.W.2d 688, 692 (Mo.App.1994). "Since our society recognizes the varied use of automobiles, the exclusive possession of premises rule has been modified when automobiles are involved because of 'the reality of the contemporary use of the automobile as a means of social accommodation.'" *State v. Allen,* 744 S.W.2d 865, 868 (Mo.App.1988) (quoting *State v. Bowyer,* 693 S.W.2d 845, 848 (Mo.App.1985)). "In the case of automobiles the full effect of [the exclusive possession] rule is tempered by evidence of equal access by persons, other than the owner, to the vehicle." *Bowyer,* 693 S.W.2d at 848. "In cases where there is joint control, a defendant is still deemed to have possession and control where there is additional evidence connecting him with the controlled substance." *Yahne,* 943 S.W.2d at 745; *see also Powell,* 973 S.W.2d at 559.

Defendant claims that he and Koonce jointly controlled the toolbox in the back of his truck and that there were not sufficient facts presented to "buttress an inference that [Defendant's] presence in and ownership of the truck, along with his other actions that evening, demonstrated knowledge of the methamphetamine that was found ..., an awareness of its presence, as

well as conscious and intentional control over it." We disagree.

First, and most importantly, Defendant owned the truck in question. While there was a passenger in the cab of the vehicle, there was no evidence presented that Koonce had access to or control of the toolbox in the back of the truck and there was certainly no evidence that the access was equal. Defendant rallies a number of cases in an attempt to aid his cause. However, all of the cases relied on by Defendant concern situations where the defendant was driving a car he or she did not own and to which he did not have regular access. There was no evidence presented that Koonce (or anyone else) used the truck, made decisions concerning the truck or was a frequent passenger in the truck.

 Further, even if we assume that others had access to the toolbox, Defendant, as the owner, certainly also had access and "a defendant's access to the area in which drugs were found is an incriminating fact which is not destroyed by the fact that another also had access to the area." *State v. Keller*, 870 S.W.2d 255, 260 (Mo. App.1994). It is also significant that the methamphetamine in the toolbox was located on the driver's side. While it is true that "proximity to the contraband, alone, even as to a substance in plain sight, [does not] tend to prove ownership or possession as among several persons who share the premises," *Bowyer*, 693 S.W.2d at 847; it is also true that superior access to contraband as among two or more people, "is an incriminating fact." *Powell*, 973 S.W.2d at 559; *see State v. Shinn*, 921 S.W.2d 70, 73 (Mo.App.1996).

Second, Officer Wilkins testified that when he approached Defendant's vehicle, he noticed a "strong odor of ether," which is used in the manufacture of methamphetamine. The State argues that reasonable jurors could infer that Defendant was aware of the substance that caused the

odor. *See Purlee*, 839 S.W.2d at 588; *see generally State v. Meanor*, 863 S.W.2d 884, 889 (Mo. banc 1993). Defendant complains that no evidence was presented that he could have smelled the ether inside of the cab of the pick-up or that he would even have known what ether smelled like or was used for. While we do not think the "strong smell" of ether emanating from the toolbox directly behind the driver's side of the cab would be enough, alone, to prove possession on the part of Defendant, nevertheless we do believe that it is incriminating evidence. The jury could reasonably infer that the "strong smell of ether" would have been noticeable to Defendant at some point.[2]

 Third, Defendant was found with a syringe and a small weight in his jacket pocket, as noted *supra*. There was testimony presented that a syringe is often used to inject methamphetamine and that small weights of the type found on Defendant are often "used to calibrate or measure out different weights of controlled substances." "[E]vidence of uncharged crimes is admissible to 'demonstrate defendant's knowledge of particular facts, giving inference of defendant's awareness of his or her commission of the crime charged.'" *Yahne*, 943 S.W.2d at 745 (quoting *State v. Clover*, 924 S.W.2d 853, 855 (Mo. banc 1996)). We note there was also a small weight in the canvas bag that was found next to the methamphetamine.

Taken together, we find that the evidence was sufficient for a reasonable juror to have found that Defendant possessed the methamphetamine found in his truck. The methamphetamine was located in the toolbox of the truck on the driver's side; there was a strong odor of ether emanating from that portion of the truck; Defendant owned the truck and had ready access to the toolbox; Defendant was found in possession of a syringe and a small weight, both of which are often used in

---

2. We do note that Officer Wilkins testified that when he approached the driver initially and smelled the ether, the Driver's window was down.

connection with illegal drugs. Defendant's first point is denied.

## II.

In his second point, Defendant claims the trial court committed plain error in depriving Defendant of the "ability to present the exculpatory testimony of Mr. Graves, which was consistent with [Defendant's] defense, resulting in a manifest injustice." Defendant acknowledges that this claim of error was not properly preserved at trial and requests plain error review. *See* Rule 30.20, Missouri Court Rules (1999). Although not compelled to review this point, we do so *ex gratia.*

The record reflects that two days before the trial, Defendant's trial lawyer ("Defense Counsel") filed a motion for continuance asking for more time to locate three "potential defense witnesses." On the morning of trial, Defense Counsel stated that he had located, subpoenaed, and spoken to Mr. Arlin Graves, one of the three potential witnesses, and found that he had a pending felony case for possession of methamphetamine, stemming from an incident unrelated to the case at bar. Defense Counsel further explained to the court that he suspected that:

> [Mr. Graves'] testimony in this case ... would possibly result in [Mr. Graves] making some incriminating statements that may, then, be used against him on his other pending felony case on the issue of knowledge. And because of that [Defense Counsel] explained to Mr. Graves that he was not comfortable going forward and taking a statement from him or presenting his testimony without [Mr. Graves] having the chance to exert his Fifth Amendment rights and talk to counsel....

Defense Counsel then explained to the trial court that Mr. Graves had talked to an attorney and had decided to assert his Fifth Amendment rights, but that "Mr. Graves' testimony, if he were to waive his Fifth Amendment rights, would be helpful and exculpatory regarding [Defendant,]

because he would basically say that ... Koonce ... was the person in possession of the methamphetamine that was located in the truck...." Mr. Graves was present at the beginning of trial and, under the examination of Defense Counsel, stated to the court that he had talked to an attorney and wished to assert his Fifth Amendment rights and if called to testify would do so.

Following voir dire, Defense Counsel asked the court to dismiss the case because, without the testimony of Mr. Graves, Defense Counsel was "in a position of being unable to present, on behalf of [Defendant,] an adequate defense...." The trial court denied Defense Counsel's motion. Defendant now complains that the trial court should have inquired further *sua sponte* into the basis for Mr. Graves' assertion of his right against self-incrimination, specifically as to whether Graves could have provided any legitimate testimony without incriminating himself. Further, Defendant argues that Graves waived his privilege by speaking to Defense Counsel before the trial.

"Resolution as to whether a claim of privilege is proper rests within the sound judgment of the trial court." *State v. Sanders*, 842 S.W.2d 170, 173 (Mo.App. 1992).

The privilege against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and Article I, section 19 of the Missouri Constitution. The privilege protects an individual from being an involuntary witness against himself in any proceeding, criminal or civil, formal or informal, where his answers might incriminate him in future criminal proceedings. *State ex. rel. Munn v. McKelvey*, 733 S.W.2d 765, 768 (Mo. banc 1987). The privilege extends not only to answers that would completely reveal guilt of a crime, but also to questions whose answers might reveal facts which could be a link in a chain of evidence connecting him to a crime. *Id.*; *State ex rel. Flynn*

*v. Schroeder*, 660 S.W.2d 435, 437[4] (Mo.App.1983).

*State v. Carey*, 808 S.W.2d 861, 865 (Mo. App.1991).

> Once a witness invokes his constitutional privilege against self-incrimination, a rebuttable presumption arises that his answer might tend to incriminate him. This presumption can be rebutted by a demonstration by the questioner that the answer cannot possibly have a tendency to incriminate the witness. Only after the questioner makes such a demonstration may a court compel an answer to the question in derogation of the privilege against self-incrimination.

*State ex rel. Munn*, 733 S.W.2d at 768; *see Carey*, 808 S.W.2d at 865. "[A] valid claim of privilege can be waived." *Sanders*, 842 S.W.2d at 173.

■■■■ We first address Defendant's contention that Mr. Graves waived his privilege by talking to Defense Counsel. " 'A witness waives his Fifth Amendment privilege against self-incrimination when he discloses information which would incriminate him and thereafter must disclose the details of that activity.' " *State ex rel. Long v. Askren*, 874 S.W.2d 466, 472 (Mo.App.1994)(quoting *State v. Ruff*, 729 S.W.2d 556, 560 (Mo.App.1987)). However, the court will " 'indulge every reasonable presumption against waiver and ... a waiver [will] not be declared unless it clearly appear[s] that the witness intended to and did knowingly waive his rights.' " *Williams v. Gary Breedlove Const. Co.*, 950 S.W.2d 557, 561 (Mo.App.1997)(quoting *State v. Cavanaugh*, 419 S.W.2d 929, 936 (Mo.App.1967) and cases cited thereunder). Here, the record does not even reflect that Mr. Graves told Defense Counsel anything. Instead the record shows that Defense Counsel first learned that Mr. Graves might be an exculpatory witness from *Defendant;* that Defense Counsel then talked to Mr. Graves and learned that he had a pending case for possession of methamphetamine; and that Defense Counsel explained to Mr. Graves "that [Defense Counsel] was not comfortable going forward and taking a statement from him or presenting his testimony without [Mr. Graves] having the chance to exert his Fifth Amendment rights...." At no point does Defense Counsel state that Mr. Graves divulged to him any information about the case at bar, much less that he divulged incriminating information. We find no support in the record for the claim that Mr. Graves waived his privilege.

■■■■ Turning to Defendant's claim that the trial court had a duty to inquire further *sua sponte* into the basis for Mr. Graves' assertion of his right against self-incrimination, we note that "[w]hen there has been no waiver of the privilege, a blanket invocation of the right by a witness is routinely upheld by the trial court." *Sanders*, 842 S.W.2d at 173. Here, as noted *supra,* Graves did not waive his privilege. Further, the record reveals that it was Defense Counsel that first became concerned that any statement made by Graves might be incriminating and, therefore, directed Graves to talk to counsel. Defense Counsel also was the one who examined Graves about his desire to assert his privilege against self-incrimination and, once that privilege was asserted, made no attempt to rebut it by a demonstration that the answer could not possibly have a tendency to incriminate Graves. *See State ex rel. Munn*, 733 S.W.2d at 768. Further, Defense Counsel made no effort to elicit any more than a "blanket invocation of the right" from Graves.

■■■■ Defendant directs us to *Sanders*, 842 S.W.2d at 174, for the proposition that "the trial judge has a duty to determine whether a narrower privilege would suffice to protect the witness from danger while permitting the defendant to elicit desired testimony." The facts in *Sanders* differ from those in the case at bar. In *Sanders*, the court was dealing with a situation where the witness in question had already pled guilty to his part of the robbery that was the basis for the case against the defendant. *Id.* at 172. As opposed to the situation at hand, the court in *Sanders* was, therefore, dealing with the issue of

whether and to what extent the witness had waived his privilege. *Id.* at 173–74. "All the trial court is required to do is make an adequate record that the privilege against self-incrimination will be invoked by some reliable and certain means." *Carey*, 808 S.W.2d at 866. If that invocation has "any rational basis," the court cannot compel the witness' testimony. *State v. Whitfield*, 939 S.W.2d 361, 368–69 (Mo. banc 1997). Here, we cannot say that the trial court abused its discretion, such that a manifest injustice or a miscarriage of justice resulted, in allowing the blanket invocation of Graves' privilege in that Graves clearly invoked the privilege on the record and with the advice of counsel, there was a rational basis for the privilege, and Defense Counsel not only failed to rebut the invocation, but was the first person to recognized that Graves' testimony could be self-incriminating. Defendant's second point is denied.

The judgment is affirmed.

GARRISON, C.J., PREWITT, J., concur.