**STATE of Missouri, Plaintiff-Respondent,**

v.

**Siegbert MUTHOFER, Defendant-Appellant.**

**No. 51970.**

Missouri Court of Appeals, Eastern District, Division Three.

May 26, 1987.

Motion for Rehearing and/or Transfer Denied June 24, 1987.

Daniel V. O'Brien, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

Defendant appeals from his conviction in a jury tried case of three counts of sodomy, Section 566.060 RSMo (1982 Supp.), fifteen counts of deviate sexual assault in the first degree, Section 566.070 RSMo (1978) and

seven counts of deviate sexual assault in the second degree, Section 566.080 RSMo (1978), for which he received a sentence of 185 years and a fine of $22,000. On appeal he alleges that the trial court erred in admitting evidence of uncharged previous sexual acts with boys, and in not declaring a mistrial after the prosecutor made improper remarks during the opening statement and the closing argument. We affirm.

The jury could reasonably find from the evidence that the defendant engaged in various sexual acts with players under his supervision and instruction who had just attained the age of puberty. These acts usually but not always occurred at defendant's home and were tied in with the boys' desire to advance their soccer careers.

At trial, defendant faced charges for his conduct with two players he coached. Two counts were for sodomy with Y.Z.[1] in May and June of 1982. Y.Z., a thirteen year old, went to defendant's house to help work. Defendant asked if he masturbated.

Defendant and Y.Z. then exposed themselves and, as Y.Z. put it: "[H]e had me go down on him." At another time defendant performed oral sex. Also, in May 1982, defendant anally sodomized Y.Z. Throughout these encounters defendant told Y.Z. that he wanted him and that defendant could make him the best soccer player and goalie and that Y.Z. would get a scholarship. In May 1985, Y.Z. reported defendant to the police.

The remaining counts resulted from defendant's conduct with A.B. A.B. began playing for defendant at the age of eleven. In July 1980, A.B. went to defendant's house to help with some chores. While there, defendant approached A.B. and asked him if A.B. was his friend and if he wanted to play soccer for him. After A.B. responded yes, defendant told A.B. that defendant wanted to see him "the way that you were born." After A.B. disrobed, defendant hugged him and requested that A.B. touch defendant's penis. While that was the extent of contact on that day, subsequently A.B. and defendant began

sexual activities with defendant at his house at least once a month, except for two gaps when A.B. broke his leg and when he left the team for a short while. These activities, included oral sex, anal sex and masturbation. In June 1981, A.B. witnessed defendant's oral sodomy with Y.Z. Throughout this period, defendant would tell A.B. that he loved him and that if defendant did not love A.B. he would hate A.B. Defendant advised A.B. that he would not want to learn what defendant's hate was. Defendant also informed A.B. that the sexual relationship would only last until A.B. turned 18. After April 1985, when A.B. was sixteen, the visits ended.

The prosecution also offered the testimony of other victims of defendant. In 1968, E.F., then 13 and a member of a team defendant coached, visited defendant's apartment. Defendant prepared, E.F. and another boy who accompanied him, a drink which E.F. sipped. The other boy began reading aloud from a book on masturbation. Next E.F. heard defendant and the other boy discussing him, saying "is he ready" or "should we invite him?" Defendant invited E.F. to engage in masturbation with him and the other boy. E.F. declined. Later defendant asked E.F. if he "wanted to do this type of thing next weekend." E.F. declined.

Next was G.H. When he was twelve, he began playing for defendant's team. The next year, in 1979, just before his thirteenth birthday, he broke his leg and could not play. G.H. went to turn in his uniform at a team practice. While the team practiced, G.H. sat next to defendant and they conversed. During this conversation, defendant asked G.H. how he liked their friendship. After G.H.'s positive response, defendant told G.H. that they had a good relationship but that it needed something to make it better. G.H. replied no. Defendant continued, telling G.H. to think about it. G.H. again declined and from his testimony it appears that, at that time, G.H. was uncertain of the meaning of defendant's request. Later, G.H. visited de-

---

1. The initials used are not the true initials of the young men who testified.

fendant's house to help clean uniforms. Towards the end of the evening, defendant asked G.H. if he masturbated. G.H. admitted he did. Later, defendant telephoned G.H. who was now near 13. Defendant told him that G.H. knew what defendant needed. G.H. asked defendant to come to the point. Defendant then uttered his oft repeated request that "I have to see you the way you were born." G.H. again declined. Defendant then replied that G.H. was dismissed from the team. G.H. replied that he would tell his parents, to which defendant requested that G.H. should "forget the whole conversation" and that G.H. would continue to play soccer.

In 1975, defendant approached another player, thirteen year old I.J. while at a soccer picnic. I.J. asked defendant if he could have a beer. Defendant gave him a beer and told him that he was a good guy and a good soccer player and that defendant liked him a lot. Then, as I.J. puts it, "out of the blue," defendant asked for "a head job." I.J. said no. Defendant then requested I.J. not tell anyone to which I.J. agreed.

In 1983, K.L., a twelve year old soccer player for defendant, his family and defendant met after practice at a local restaurant. While the group sat at the table, defendant whispered to K.L. and asked if he would do anything for him. Defendant then tapped K.L. on the shoulder and motioned for him to follow. First defendant, and then K.L., went to the men's room. When K.L. entered, defendant admonished him for following too quickly. Defendant stood at the urinals with his erect penis protruding from his pants and asked K.L. whether he thought defendant's penis "was a big one." K.L. did not reply. Defendant then asked K.L. to touch it. K.L. replied no, but defendant, several times, repeated his request. K.L., feeling threatened, complied. Defendant then asked him if he wanted to be like "M." Defendant told him that M "did it" for him, that he was one of the "first little guys" and that K.L. would "have to do more stuff, too, later." K.L. left the restroom and returned to the table. As they were leaving the restaurant, defendant advised K.L. to remain silent.

A.B.'s older brother also testified. He told of joining defendant's soccer team in 1977, when he was a seventh grade student. Shortly after joining the team, while on a European trip, defendant approached A.B.'s brother. They were staying in a house. After a hard day, defendant asked A.B.'s brother if he was tired. He answered yes. Defendant told him to undress and take a nap. Later, defendant came over to A.B.'s brother, who was dressed only in his underpants, caressed his body and then inserted A.B.'s brother's penis into defendant's mouth. Previous to these acts, defendant had conversed with him, saying that they had a certain relationship, "a giving relationship," and that certain favors should be exchanged. Defendant described these favors as being sexual. A.B.'s brother, at first, was not receptive, so defendant became cool towards him and he was not included in the group.

After the first European trip, A.B.'s brother succumbed and engaged in frequent sexual encounters with defendant at his house. These meetings, three to four times monthly, involved amatory touching, anal and oral sex. During this time, defendant arranged for a discounted ticket which enabled the child to accompany the soccer team on a second trip to Europe. After four years, the encounters ceased.

Defendant's first point contends that the court erred when it admitted the testimony of the various witnesses which pertained to acts of sexual misconduct by the defendant that were not charged. *State v. Howard,* 714 S.W.2d 736, 738 (Mo.App.1986). Because the statute of limitations had run, these acts were uncharged. Defendant argues that he was prejudiced by these testimonies since the jury could succumb to the inference that if he "did it once before" he probably did it this time. Further, defendant states that as the jury was aware of the statute of limitations issue because of the prosecutor's opening statement, it was likely to punish the defendant via the charged offenses for the ones on which he had not been charged. These assumptions are made without any factual substance

and we need not respond to defendant's speculations.

Defendant does acknowledge that there is an exception to the above rule. Evidence of other crimes is admissible if the evidence tends to establish (a) motive, (b) intent, (c) absence of accident or mistake, (d) a common plan or scheme or (e) identity. *State v. Mitchell,* 491 S.W.2d 292, 295 (Mo. banc 1973). Here, the state offered the evidence to prove a common plan or scheme, in that, the defendant, for many years, systematically and regularly would approach the youths in his charge, earn their respect, trust and admiration and then, cryptically, would test their vulnerability in the confines of his home. The evidence consistently revealed that if the response was not completely negative, he would persistently pursue and eventually request sexual favors. As a boy grew older, defendant's ardor would cool and he would seek a substitute or substitutes. Furthermore, defendant used the examples of other players who had fallen under his influence to dispel the doubts of those solicited. Implicit and explicit throughout was defendant's use of his position as soccer coach with its powers to advance or retard the youths' soccer careers.

Defendant cites *State v. Bullock,* 651 S.W.2d 173 (Mo.App.1983) for the proposition that evidence of other uncharged sexual offenses committed by the defendant against a person other than the victim of the charged offense is admissible only as to issues of identity or mistake. *Id.* at 175. We disagree. As we held in *State v. McDaniels,* 668 S.W.2d 230, 233–34 (Mo. App.1984):

> Defendant misconstrues this court's opinion in *Bullock.* The victim in *Bullock* contended that she was raped by *two men in a trailer while the defendant was present.* By her own admission, the victim voluntarily left the trailer with defendant and accompanied him to place near the Missouri River Bridge. However, she contended that once there, defendant raped her. At trial, the court permitted the testimony of another woman who alleged she had been raped by

> defendant in the trailer one week prior. (Emphasis in original).

> Defendant took the stand in his own defense. He admitted his presence at the Missouri River Bridge with the woman and that they had intercourse, but claimed he did so with her consent.

> Unlike the present case, the evidence in *Bullock* made clear that the rape for which defendant was on trial was in no way similar to the separate attack divulged to the jury. In light of the substantial similarities in the two attacks in the present case, *Bullock* is of no help to defendant.

Thus, the reversal in *Bullock* was based on the fact that the two sexual occurrences were dissimilar and not because the evidence was not admissible as an exception to the general rule.

In response, respondent cites numerous cases which allow common plan evidence. In *State v. Koster,* 684 S.W.2d 488 (Mo. App.1984), this court held admissible the testimony of three witnesses who, were inmates at a juvenile center. They testified that defendant, who was charged with their supervision, initiated sexual encounters with them in exchange for special privileges while they were held at the center. The court agreed that their testimony indicated "that all of the sexual encounters resulted from a scheme or plan by the defendant to exercise control or custody over his wards and to make them the target of his sexual excess." *Id.* at 490. Similar circumstances are found in *State v. Smith,* 694 S.W.2d 901 (Mo.App.1985) and *State v. Dalton,* 587 S.W.2d 644 (Mo.App. 1979).

Defendant acknowledges these cases but contends that they do not overrule *Bullock.* That is true, but that is because *Bullock,* as noted above, does not hold that evidence of common plan or scheme is inadmissible. Further, defendant attempts to distinguish each case by saying that a careful reading of the three reveals that in each case the grounds for the admission of the evidence was not a common plan or scheme, but, instead, modus operandi and identity, *Smith,* 694 S.W.2d at 902; identi-

ty, *Koster,* 684 S.W.2d at 490–491; and res gestae, *Dalton,* 587 S.W.2d at 695. We disagree. We read those cases not as allowing common plan only as a means of establishing identity or the other exceptions but, as adopting common plan as well as the other exceptions each as independent and sufficient grounds for the admissibility of uncharged prior sexual misconduct.

■ At oral argument, defendant contended that the trial court erred in allowing evidence of sexual misconduct which was so remote that it unfairly prejudiced him. We disagree. Defendant faced charges regarding two victims. One victim possessed a questionable credibility as he had a history of drug and alcohol abuse. More significantly, he attempted to blackmail defendant over the incident, threatening to inform the prosecutor of defendant's acts unless defendant gave him $20,000. The defendant vigorously attacked the credibility of the other victim by inquiring as to his drinking and as to hostilities between the defendant and the victim. The state to buttress the witnesses' testimony presented the testimony of five other witnesses whose similar encounters with defendant had occurred as far back as 1968. In each case the heretofore related facts of the witness' encounters with defendant underscored the common plan. Evidently, defendant, for nearly two decades, engaged in a persistent effort to procure young boys for his personal gratification. Because of the facts of this case, including the fact that the individual shame and humiliation of the victim only served to impose a wall of silence which inhibited the early discovery of defendant, we cannot say that the trial court abused its discretion. Such matters as remoteness of time go to the weight to be given to the testimony and not its admissibility. *State v. Simerly,* 463 S.W.2d 846, 848 (Mo.1971). *See also United States v. Engleman,* 648 F.2d 473, 479 (8th Cir.1981) (not error to admit evidence of misconduct occurring 13 years previous); and *State v. Engleman,* 653 S.W.2d 198, 199 (Mo.1983) (sustaining the admission of the same evidence, although not discussing the remoteness issue).

*Dockery v. State of Indiana,* 504 N.E.2d 291, 295 (Ind.App. 4 Dist.1987) (admitted evidence of sexual misconduct which occurred 17 to 30 years prior to the charged acts).

Defendant offers in the alternative that the evidence does not fit within the common plan exception and therefore it was inadmissible. He states that there was no showing that the events were different stages of a plan, steps toward a final goal or interconnected. Rather, he says, they were born of impulse. The detailed evidence noted above clearly indicates that defendant's acts were far more than isolated events but were calculated, premeditated, planned and designed.

■ Point II is also without merit. Defendant claims the trial court failed to declare a mistrial after the prosecutor made an opening statement setting out the defendant's uncharged sexual misconduct. The state contends that appellant's argument in his brief violates Supreme Court Rule 30.06(h) because the argument is devoid of any transcript cites to the opening statement and therefore it should be waived and dismissed. *State v. Cheeks,* 604 S.W.2d 30, 32 (Mo.App.1980). The state also argues that prior to trial, appellant made a motion *in limine* to preclude any reference to or admission into evidence of appellant's sexual misconduct with other team members. However, appellant failed to object to any of the prosecutor's statements during opening statement and instead waited until after the prosecutor concluded his statement. We recognize that in order to preserve an issue brought in a motion *in limine,* the defendant must object to the introduction of evidence or the statement at trial, *State v. Pilchak,* 655 S.W.2d 646, 649 (Mo.App.1983). Moreover, in order to preserve for appellate review any complaints of improper jury arguments, the defendant must object at the time the arguments are made, *State v. Green,* 674 S.W.2d 615, 622 (Mo.App.1984), and to raise the issue in a motion for new trial. *State v. Jennings,* 649 S.W.2d 448, 452 (Mo.App.1983). Appellant did neither. This point is not properly preserved for

**510**

review and we will ex gratia review this point under plain error according to Supreme Court Rule 30.20.

 As the evidence of uncharged sexual misconduct was in fact admissible, it was proper for the prosecutor to discuss it in his opening statement. Nor was the statute of limitations explanation improper. While, as defendant urges, it could have been, by inference, a clarion call to the jury to punish defendant now for the acts not charged, it also served to explain why these charges were not brought to trial. We find no error, plain or otherwise, and hold that the trial court did not abuse it broad discretion in controlling the opening statement. *State v. Kirksey*, 658 S.W.2d 60, 61 (Mo. App.1983).

 Defendant's final point attacks the trial court's failure to declare a mistrial when the prosecutor expressed a personal opinion on defendant's guilt and when he encouraged the jury to penalize defendant for both the charged and uncharged misconduct. As cited in Point II, appellant again failed to comply with our Supreme Court Rules. We therefore, review under the plain error doctrine. Defendant did object twice to arguments of the prosecutor and in each case he did not request a mistrial but asked that the jury be instructed to disregard the argument. The trial court granted all of the relief he asked. Defendant cannot now complain of not receiving relief that he never requested. We find no plain error.

The seeds of our permissive and promiscuous society sown in the last score of years are now coming into full bloom and their effects and fallout are painfully being felt at an ever exceedingly rapid pace. While morals and mores may change, our elected representatives have found it necessary and appropriate to limit such lifestyles. These limitations are absolutely essential in any society to protect and preserve society's most valuable resource ... our young children. To those who choose to deviate from the accepted standards of our civilized society, they must endure the severe consequences and we affirm the judgment below.

CRANDALL and KAROHL, JJ., concur.