**STATE of Missouri, Respondent,**

**v.**

**Alvaro MOLINA, Appellant.**

**No. SD 28996.**

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 10, 2008.

Margaret M. Johnston, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jamie Pamela Rasmussen, Office of Attorney General, Jefferson City, for respondent.

DANIEL E. SCOTT, Presiding Judge.

Alvaro Molina ("Defendant") appeals his bench-trial convictions for murder and armed criminal action. He does not challenge the sufficiency of the evidence, which we summarize in the light most favorable to the verdict. *State v. Hill*, 250 S.W.3d 855, 856 (Mo.App.2008).

### Facts and Background

The victim, Francisco "Paco" Gaspar, lived at Linda Faz's house. He started dating Tiffany Rice, who moved in with him for a short time. Tiffany[1] never got

---

1. Since the parties commonly have referred to witnesses by first name, both at trial and on appeal, we will do likewise for clarity and consistency.

along with Linda, then started fighting with Paco. Tiffany soon moved out, leaving behind some belongings.

Tiffany called Linda about retrieving her property. Linda felt Paco needed to be there, since the items were in his room. Later, Tiffany arrived in a truck driven by Defendant. Paco had just left with an acquaintance, Richard Ward. Linda called Paco, told him Tiffany was there, and asked him to return.

Paco returned, entered the house, and brought out Tiffany's belongings. Tiffany claimed some things were missing, and an argument ensued. Tiffany ran to the house and fought with Linda to get inside. Tiffany yelled to Defendant, "I thought you had my back!" Replying "I do," Defendant approached, pulled a gun, misfired it, then shot at the house as Tiffany and Linda scrambled inside. Paco followed them in, slammed and locked the door, and told Linda to call 911. Tiffany jumped on Linda and called to Defendant, "Get in here. They're calling 911. Get in here and shoot 'm.' "

Still outside, Defendant forced Richard Ward to the door at gunpoint and made him beg for entry. Linda would not open the door. Tiffany kept shouting for Defendant to come in and shoot Linda because she was calling 911. Defendant "busted" the door open and forced his way inside.

Tiffany kept telling Defendant to shoot Linda. Defendant pointed the gun at Linda; Paco shoved her aside; and Tiffany told Defendant to kill him. Defendant shot and mortally wounded Paco, then ran with Tiffany to the truck and sped away.

### "Bad Acts" Claim and Analysis

■ Defendant claims he was denied, at trial, "the opportunity to question Richard about the fact that ... Richard and Paco [recently] had engaged in criminal conduct ('bad acts') ... in that the fact that Richard had engaged in a prior bad act with Paco just prior to Paco being shot was relevant and material to show Richard's bias in favor of Paco and thus against [Defendant]."

Defendant did not raise this complaint in the trial court or make an offer of proof. We quote from defense counsel's cross-examination of Richard Ward:

Q. [by defense counsel]: ... you indicated that that particular day when you arrived at the house, that you got there and you kind of visited a while while Christina [Richard's wife] was getting her hair done, right?

A. Yes.

Q. And then pretty quickly, you and Paco left?

A. Yes.

Q. Where did you guys go?

A. We went to one of his friend's house.

[ASSISTANT PROSECUTOR]: Judge, I'm going to object. Irrelevant.

THE COURT: Well, unless it ties in, [defense counsel]. I don't know whether it's going to be relevant or not. Tell me.

[DEFENSE COUNSEL]: Well, it goes to show what they were going and getting—

[ASSISTANT PROSECUTOR]: Judge, it's going to get into a prior bad act, and I don't think—it's not admissible.

THE COURT: A prior bad act involving this witness? Involving who?

[ASSISTANT PROSECUTOR]: It would be involving both this witness and [Paco].

THE COURT: I think the law's pretty clear. Unless it's relevant to the events here, [defense counsel], it wouldn't be admissible.

Q. [By defense counsel] At some point—

THE COURT: Sustained, in other words.

[DEFENSE COUNSEL]: All right. That's what I figured, Judge.

Q. [By defense counsel] Now, you indicated that you had told your wife you were going to the store; is that correct?

A. Yes.

Q. Okay. And that wasn't necessarily true, correct?

[ASSISTANT PROSECUTOR]: Judge, I'm going to object. Same grounds as before.

[DEFENSE COUNSEL]: I think this goes to bias or credibility.

THE COURT: That's a credibility issue. Objection's overruled.

A. We did go to the store.

Q. Okay. There was another purpose, though, also, correct? I don't want you to tell me what it is. Just there was something else you guys were going to go get; is that right?

A. Yes.

Q. Okay. And you didn't tell your wife about that, correct?

A. Correct.

 When the trial court sustained the State's objection to the inquiry about Richard's trip with Paco, Defendant was obliged to " 'demonstrate its relevancy and materiality by way of an offer of proof in order to preserve the matter for appellate review.' " *State v. Comte,* 141 S.W.3d 89, 93 (Mo.App.2004)(quoting *State v. Cardona–Rivera,* 975 S.W.2d 200, 204 (Mo.App. 1998)). An offer of proof serves two important purposes:

First, it allows the trial judge to further consider the claim of admissibility after having ruled the evidence inadmissible. Second, it preserves the evidence so an appellate court can understand the scope and effect of the questions and proposed answers in considering whether the trial judge's ruling was proper.

*State v. Lingle,* 140 S.W.3d 178, 187 (Mo. App.2004). An adequate offer of proof must establish (1) what the evidence will be; (2) its purpose and object; and (3) each fact essential to establishing its admissibility. *Id.* The above-quoted record shows, as in *Lingle,* that Defendant proved none of these.

Absent proof of bias or relevance, a witness's uncharged "bad acts" are collateral, with no probative value. *State v. Wolfe,* 13 S.W.3d 248, 258 (Mo. banc 2000). Defendant now claims his proposed questioning "was relevant and material to show Richard's bias," but did not present this argument to the trial court, so we decline to consider it. *Lingle,* 140 S.W.3d at 188.

Defendant raises no plain error claim, and we find no such relief warranted upon *ex gratia* review. The convictions and judgment are affirmed.

BARNEY and BATES, JJ., concur.