**STATE of Missouri, Respondent,**

v.

**Devarick THOMPSON, Appellant.**

**No. ED 98425.**

Missouri Court of Appeals,
Eastern District,
Division Five.

June 25, 2013.

---

1. All rule references are to Mo. R.Crim. P.2012, unless otherwise indicated.

Ellen H. Flottman, Columbia, MO, for appellant.

Chris Koster, Attorney General, Jennifer A. Rodewald, Assistant Attorney General, Jefferson City, MO, for respondent.

KURT S. ODENWALD, Judge.

### Introduction

Appellant Devarick Thompson (Thompson) appeals from the judgment entered upon a jury verdict of first-degree murder, Section 565.020,[1] and armed criminal action, Section 571.015. On appeal, Thompson argues that the trial court committed instructional error, erroneously admitted evidence, and incorrectly failed to grant two separate motions for mistrial. For the reasons detailed below, we find Thompson waived any appellate review of his first, second, fourth, and fifth points on appeal. Regarding his third point on appeal, which was not waived, we find that the trial court did not plainly err in failing to grant a mistrial after the State referred to the underlying death as a "gangland murder" during closing argument. Accordingly, the judgment of the trial court is affirmed.

### Factual and Procedural History

The facts established at trial, viewed in the light most favorable to the verdict, are as follows. On the evening of June 15, 2010, Laverta and Ike Boykins (Mrs. and Mr. Boykins, respectively) allowed Thompson and several other individuals to stay overnight at their home. In the morning, Mrs. Boykins awoke to find Thompson walking into her bedroom with Joey Richmond (Richmond) walking behind him and pointing a handgun at Thompson's back. Richmond accused Thompson of stealing guns owned by Richmond, and demanded to know where Thompson had put them.

During Richmond's interrogation of Thompson, one-by-one, the other occupants of the house came into the Boykins's bedroom. Richmond forced each person to sit on the floor and wait while he continued questioning Thompson. After holding the group in the bedroom, Richmond moved all the individuals to the living room so that Mrs. Boykins could get dressed. Mrs. Boykins eventually left the house to go to work. Before she left, Richmond apologized to Mrs. Boykins, told her he did not intend to kill anyone, and asked her not to go to the police. Mrs. Boykins went immediately to a police station and reported the incident. The officers responded to the apparent hostage situation by asking Mrs. Boykins to fill out a report.

When Mrs. Boykins returned home later that day she saw all the same people sitting around and talking peaceably in her living room. Richmond eventually left the home with two of the people in the house to go to a liquor store. None of the occupants, including Thompson, left the house while Richmond was away. While Richmond was gone, Thompson stated that he would kill Richmond if he returned. Richmond returned shortly thereafter with the same two people, plus a third individual. Richmond did not have a gun, but two of the people with him had guns in their waistbands. The group of people began

---

1. All statutory references are to RSMo. Cum. Supp. (2010).

drinking the alcohol Richmond purchased from the liquor store.

As the group sat in the living room, Richmond stood up and walked into the kitchen to again apologize to Mrs. Boykins. While Richmond stood with his back to the living room, Thompson retrieved a gun from beneath the couch cushions where he was sitting, walked behind Richmond, and shot him twice in the back. After Richmond fell to the ground, Thompson shot him again in the head, kicked him, spit on him, and said "I told you I was going to get you." Thompson then fled the house.

The State charged Thompson with first-degree murder and armed criminal action. Thompson testified in his own defense at trial. Thompson testified that Richmond was armed at the time Thompson shot him, that Richmond never left the house to go to the liquor store, and that Thompson shot Richmond in self-defense believing his life was in danger. A jury found Thompson guilty of both counts, and the trial court entered a judgment accordingly. Thompson now appeals.

### Points on Appeal

Thompson presents multiple points on appeal. In his first point, Thompson argues that the trial court plainly erred in instructing the jury on self-defense without modifying the instruction to include the "appearance doctrine." In his second point, Thompson contends that the trial court plainly erred in admitting into evidence a handgun recovered near the scene of the crime because the evidence was more prejudicial than probative. In his third point, Thompson asserts that the trial court abused its discretion in overruling his objection to the prosecutor's statement in closing argument that the murder was a "gangland killing." In his fourth point,

Thompson avers that the trial court abused its discretion in failing to declare a mistrial after an outburst from one of Richmond's family members occurred in the jury's presence. In his final point, Thompson claims that the trial court abused its discretion in admitting evidence that informed the jury he was incarcerated during the pendency of the trial.

### Standard of Review

■ We review plain error under Rule 30.20 [2]. We will affirm unless we find the trial court committed an error that caused manifest injustice or a miscarriage of justice. Rule 30.20. Under plain error review, the movant must demonstrate that the trial court committed an error that was "evident, obvious, and clear" and that such error resulted in a "manifest injustice or miscarriage of justice." *State v. Roper*, 136 S.W.3d 891, 900 (Mo.App. W.D.2004).

### Discussion

### I. Thompson waived appellate review of his first, second, fourth, and fifth points on appeal.

In his first and second points, Thompson claims that the trial court's decisions to offer the self-defense instruction given at trial, and to admit into evidence a handgun, resulted in plain error. Thompson concedes that he did not preserve either point on appeal. In his fourth point, Thompson argues that the trial court abused its discretion in failing to declare a mistrial after an emotional outburst by one of Richmond's family members occurred in the presence of the jury. In this fifth point, Thompson asserts that the trial court abused its discretion in admitting into evidence portions of an audio recording that revealed Thompson was imprisoned pending trial. Before we reach the

---

**2.** All rule references are to Mo. R.Crim. P. (2012).

merits of Thompson's first, second, fourth, and fifth points, we must satisfy ourselves that they are properly before this Court. A careful review of the record at trial establishes that they are not. We address each claim in turn.

 Ordinarily, a movant may claim plain error based upon instructional error if the movant can demonstrate that the trial court misdirected or failed to instruct the jury to such an extent that the error affected the jury's verdict. *State v. Dorsey*, 318 S.W.3d 648, 652 (Mo. banc 2010) (internal citations omitted). The failure of a trial court to offer a self-defense instruction where the defendant has carried the burden of injecting the issue may also constitute plain error requiring reversal. *State v. Bolden*, 371 S.W.3d 802, 805 (Mo. banc 2012). However, an exception to the availability of plain error review of instructional error exists in cases where a flawed self-defense instruction was given, but the flawed instruction was offered by the party challenging the instruction on appeal. *Id.* at 806. In such cases, "[i]t is axiomatic that a defendant may not take advantage of self-invited error or error of his own making," and the defendant has waived all appellate review related to the inaccuracy of the instruction. *Id.*

 In his first point, Thompson challenges the adequacy of the self-defense instruction offered at trial. Specifically, Thompson claims that Instruction 12 failed to instruct the jury on the "appearance doctrine." This doctrine states that whether the defendant was entitled to self-defense is determined by the circumstances as they appeared to the defendant, and not whether the defendant's conclusion as to the need for force was accurate. *Wren v. State*, 755 S.W.2d 677, 678 (Mo. App. E.D.1988). Here, the portion of Instruction 12 that deals with the appearance doctrine was submitted by Thompson. In

his proffered instruction, as it relates to the appearance doctrine, Thompson requested the trial court instruct the jury as follows:

> As used in this instruction the term "reasonable belief" means a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

The instruction offered by the trial court, as it relates to the appearance doctrine, stated:

> As used in this instruction, the term "reasonably believe" means a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

Given that Thompson submitted to the trial court the section of the instruction he now claims as the basis for plain error, we find that Thompson has waived appellate review as to his first point on appeal. *See Bolden*, 371 S.W.3d at 806.

 We reach the identical conclusion as to the admission of the evidence at issue in Thompson's second point. As is the case with instruction error, the erroneous admission of evidence may normally be raised on appeal as plain error when no objection was offered at trial. Plain error review is available where the party challenging the admission of the evidence failed to object because of inadvertence or negligence. *State v. Johnson*, 284 S.W.3d 561, 582 (Mo. banc 2009). However, an exception to the availability of plain error review exists where "a party affirmatively

states that it has no objection to evidence an opposing party is attempting to introduce." *Id. (citing State v. Mead,* 105 S.W.3d 552, 556 (Mo.App. W.D.2003)).

Here, Thompson seeks review of the trial court's decision to admit Exhibit 9, a handgun recovered near the scene of the crime. After a foundation for the evidence was presented through witness testimony, the State sought admission of Exhibit 9. The following occurred on the record:

> State: Your Honor, the state would move for admission of State's Exhibit No. 9 at this time.
>
> Court: Any objection?
>
> Thompson: No. No objection, your Honor.
>
> Court: Be admitted without objection.

Although the record does not indicate that Thompson declined to object to the evidence for a specific strategic reason, the record is clear that Thompson affirmatively consented to the admission of the evidence. In specifically agreeing to the admission of Exhibit 9 without objection, Thompson waived any subsequent appellate review of the trial court's decision to admit Exhibit 9 into evidence. *See Johnson,* 284 S.W.3d at 582 ("Appellant affirmatively stated "no objection" to the admission of the interview, thereby waiving plain error review of his constitutional rights."); *State v. Anderson,* 294 S.W.3d 96, 100 (Mo.App. E.D.2009) ("An announcement of "no objection" amounts to an affirmative waiver of appellate review of the issue."); *State v. O'Neal,* 392 S.W.3d 556, 562 (Mo.App. W.D.2013) (*citing State v. Morrow,* 996 S.W.2d 679, 681–82 (Mo. App. W.D.1999)) ("[T]he stating of "no objection" when the evidence is introduced at trial constitutes an affirmative waiver of appellate review of the issue, and, thus, the matter will not be considered under the plain error rule.").

We also find that Thompson waived appellate review of his fourth point on appeal. In Point Four, Thompson avers that the trial court abused its discretion in failing to declare a mistrial after an outburst from one of Richmond's family members occurred in the jury's presence.

The facts relating to Thompson's fourth point are not entirely clear on appeal. The record indicates that during the testimony of one of the witnesses, one of Richmond's relatives had a loud emotional outburst. In response, the trial court ordered a recess and removed the jury from the court room. Thompson requested a mistrial as a result of the outburst on the ground that the jury could not set aside the outburst and fairly reach a verdict. As a separate form of relief, Thompson requested that the trial court voir dire the jury regarding the effect of the outburst.

The trial court made a record of the incident, stating:

> Court: [T]he entire courtroom was viewing State's Exhibit No. 4, which is a photo of Joey B on the floor with blood on the floor of the kitchen of the Boykins' residence, and at that point, the family or the group of people who are family members or associates or friends of the decedent, one of the women had an extremely loud outburst, banging the bench, screaming, had to be subdued by two security officers.

The trial court then ruled on Thompson's request to voir dire the jury.

> Court: The Court believes that it was a dramatic outburst, that the jury and everybody was upset by it, and I think that the only way to determine objectively whether or not the jury can set this aside and base a verdict solely on the evidence and not anything to do with the emotional outburst is to ask them

straight out. I understand it's an unorthodox way to proceed, but the alternative is is that I decide whether or not they can set it aside in absence of any objective evidence from the jury themselves, so I'm going to grant the defendant's motion to bring the jury in and ask a limited question as to whether or not they can set this incident aside, base any verdict solely on the evidence aside from any emotion that may have been engendered as a result of that incident. Is that acceptable to you, [Thompson]?

Thompson: Yes, your Honor.

The trial court then resumed the trial and asked the jury whether anyone could not set aside the emotional outburst and decide the case based only on the evidence in a fair and impartial manner. No juror responded that they could not set the incident aside, and the following occurred on the record:

> Court: Having seen no hands raised, I then believe that we'll go ahead and proceed with the remainder of the evidence in this case with this jury in place. Is that acceptable to the defendant?
>
> Thompson: Yes, your Honor.

Although Thompson initially requested a mistrial, the trial court did not rule on that motion. Instead, the trial court granted Thompson's motion to voir dire the jury in order to determine the effect of the emotional outburst. The trial court questioned the jury about the effect of the outburst, without any juror indicating an inability to proceed with an impartial and fair determination of the merits of the case. The trial court then asked Thompson if he was satisfied, and Thompson indicated that he no longer had an objection to proceeding. Importantly, the trial court did not rule on Thompson's motion for a mistrial, and Thompson did not renew his motion for a mistrial after the trial court polled the jury.

We first note that, despite both parties' assertions to the contrary, the record shows that trial court did not deny Thompson's oral motion for a mistrial. Rather, the trial court proceeded with Thompson's request to voir dire the jury to determine the effect of the outburst. The record reveals that the trial court did not rule upon or subsequently return to Thompson's motion for a mistrial. This distinction is legally relevant to the standard of review we apply to Thompson's claim on appeal.

Important to our analysis is that the record reflects Thompson was satisfied with the result of the trial court's voir dire of the jury. After conducting the requested voir dire, the trial court asked Thompson whether he was satisfied, and Thompson stated that the voir dire was acceptable. Thompson could have renewed his objection for a mistrial at that time. Instead, Thompson affirmatively stated that he did not request any further relief as a result of the outburst, abandoning his prior request for a mistrial.

 Our adherence to the general rule that plain error review is waived upon an announcement of no objection is not limited to appellate claims related to the admission of evidence. Rather, an affirmative agreement to a trial court's proposed course of action regarding a jury also waives subsequent appellate review of the trial court's judgment. *State v. Collins*, 188 S.W.3d 69, 77 (Mo.App. E.D.2006). We find *State v. Collins* instructive on this issue. In *Collins*, the jury sent a note to the trial court during its deliberation asking whether the defendant had ever been admitted to a specific hospital for the purposes of determining whether one of the jurors had previously met the defendant. *Id.* The trial court proposed to instruct the jury that it could not answer the question,

and asked whether either party objected to the response. Neither party objected to the court's proposed response. *Id.* On appeal, this Court held that by affirmatively agreeing to the trial court's proposed response to the jury, the defendant waived appellate review of the response. *Id.* at 78.

As did the defendant in *Collins,* Thompson affirmatively agreed to the trial court's proposed course of action regarding the outburst. By expressly agreeing with the trial court's decision to proceed with the trial after conducting the voir dire, Thompson waived any appellate review of the trial court's failure to declare a mistrial. *See Collins,* 188 S.W.3d at 77; *Johnson,* 284 S.W.3d at 582.

 Further review of the record shows that Thompson also waived appellate review of his fifth point on appeal. At issue in Thompson's fifth point was the admission of Exhibit 11, an audiotape recording of a conversation of Thompson while he was incarcerated. Thompson initially objected to the admission of the recording because a prison employee would need to authenticate the exhibit, and because portions of his conversation revealed that he was incarcerated pending trial. Thompson argued that the fact of his incarceration might prejudice the jury. To remedy the issue, the State and Thompson stipulated to the foundation of the exhibit, and the State agreed to redact an introductory portion of the recording that would have revealed that Thompson was incarcerated at the time of the recording. However, when State played the recording at trial, a portion of the audiotape that should have been redacted was played. The following discussion occurred outside the hearing of the jury:

> Thompson: I was under the impression that portion was going to be redacted.
>
> State: You know, I didn't—

Thompson: Or started after the—

State: It was on when I gave you—I didn't think too much about it. It was just the—he identified himself as [Thompson] at the very beginning.

Thompson: He started turning it down. They may not have heard it.

Court: Is it on the transcript?

State: Yeah, it's on the transcript. I turned down the volume on it.

Court: Preparatory part about the correctional facility.

State: Yeah, but everybody's going to know that he's probably in there anyway. The point is is that it is—we're talking about how that does pop up from time to time in there. It's not an issue that I'm to raise or anything, and another thing, nobody's saying he's in prison or anything like that. He's in a murder case.

Thompson: They would assume that he not be on bond in a prison.

State: Exactly.

Court: Okay.

Thompson: I will make an objection to that portion being potentially prejudicial if they figure out that that means he's in prison.

Court: Well, I don't know how I'm going to determine whether they figure out that he's in prison. That's speculation as to what they will—I mean, I can give them an instruction telling them to disregard the preparatory comments.

Thompson: Let's do that.

Court: And to pay only attention to the recording between the two. Is that okay?

State: Yeah. In closing argument if you want to make a comment like, Hey, you know, he's not on bond, you can. It's obviously up to you. That's fine with me.

Thompson: Do the instruction and we can clean it up.

Court: Gentlemen, come here. Do you want to write something up or do you just trust me to wing it?

Thompson: I trust you.

State: I trust you, Judge.

The trial court then gave the requested instruction.

The fact that the trial court awarded all the corrective action requested by Thompson related to Exhibit 11 is dispositive of Thompson's final point on appeal. Thompson raised an objection, requested an instruction for the jury to disregard the objectionable content, and the trial court granted Thompson's request. As already noted, plain error review concerning a trial court's ruling is waived where the defendant affirmatively assents to the decision. *See Collins,* 188 S.W.3d at 78. Accordingly, Thompson waived all appellate review of his fifth point on appeal.

Points One, Two, Four, and Five are denied.

## II. The trial court did not plainly err in failing to declare a mistrial after the State argued that the murder was a "gangland killing."

In his third point, Thompson asserts that the trial court abused its discretion in failing to declare a mistrial when the State claimed in its closing argument that the murder was a "gangland killing." The precise issue Thompson appeals is not immediately clear. Thompson asserts in his point heading that "[t]he trial court abused its discretion in overruling defense counsel's objection after the prosecutor's closing argument." However, the record reveals that defense counsel did not offer a timely objection to that portion of the State's closing argument. Rather, defense counsel requested a mistrial because of the statement only after the jury had left the courtroom to begin deliberations. Specifically, the transcript shows the following occurred at the end of the rebuttal portion of the State's closing argument:

State: Do you think that guy would have been unarmed if he thought things were a problem? You really think that? I don't know. I don't think you would either. That tells you what this is, folks. This is a cold-blooded gangland killing and should be justly punished and justly decided. He's guilty of murder in the first degree, so, ladies and gentlemen, be able to go home and tell your families you did the right thing. Thank you.

Court: All right, ladies and gentlemen, the bailiff is going to take you back to the jury room for your deliberations. He's going to have the instructions with him. He'll also give you instructions what to do when you get back there with the buzzer and things of that nature. So you are free to go and start deliberating on the case.

The jury was then allowed to leave the courtroom, and the following occurred outside of the jury's presence:

Thompson: At this time I'd like to make a motion for a mistrial based on two grounds, your Honor, an inappropriate comment on gang activity. There was no evidence and the jury may conclude that my client, Mr. Thompson, is a gang member, which would have a negative impact, and also comments during closing argument regarding his failure to produce witnesses, and I believe that comment was initially—the door was not open by the defense, I did not believe.

. . .

Court: Well, first, the Court would note that there was no objection made at all at any time. There was no corrective action asked of the Court to ask the jury to disregard the—the comments with re-

gard to gangland. I think it has to rise to the level of manifest injustice in order to overcome the failure to object, so I'm going to deny your motion for a mistrial on the basis that you failed to object. Furthermore, I don't believe that any of the comments were so horrendous that they require, as a matter of law, the Court to grant a mistrial. The failure of you to object, the Court can conclude from that that they weren't so shocking of the conscience that a seasoned trial lawyer like yourself would stand up and scream like a wounded eagle and ask for some relief, so with that said, the Court is going to deny your motion for a mistrial.

The record is clear that Thompson did not offer a timely objection at the time of the statement, but rather requested a mistrial on the basis of the statement after closing arguments had concluded. A contemporaneous objection at the time of the statement was required in order to preserve the issue on appeal. *State v. Lingle*, 140 S.W.3d 178, 190 (Mo.App. S.D.2004). Because Thompson failed to preserve the issue, the question raised on appeal is whether the trial court plainly erred in failing to declare a mistrial in response to the State's claim that the murder was a "gangland killing."

A mistrial is a drastic remedy only warranted in extraordinary circumstances to cure grievous prejudice that cannot otherwise be remedied. *State v. Blevins*, 385 S.W.3d 526, 528 (Mo.App. S.D.2012). Relief will rarely be granted under plain error review related to closing arguments. "To reverse a conviction under plain error review on a claim of improper closing argument, a defendant must establish not only that the argument was improper, but that it had a decisive effect on the outcome of the trial and would amount to a manifest injustice or miscarriage of justice if

the error were left uncorrected." *Lingle*, 140 S.W.3d at 190–91 (*quoting State v. Anderson*, 79 S.W.3d 420, 439 (Mo. banc 2002)).

We are not persuaded that the statement made during closing argument had a decisive impact on the outcome of the case. The key factual issue before the jury was whether Thompson shot Richmond in self-defense or in retribution for Richmond previously holding Thompson at gun point. Thompson's utterance that he would kill Richmond if he returned to the house provided the jury a clear basis to conclude that Thompson acted out of retribution, not fear for his own safety. The record also reflects that Richmond was unarmed at the time Thompson shot him in the back. Nor does Thompson sufficiently explain how his argument that he acted in self-defense was effectively refuted by the existence of any gang affiliation by either Thompson or Richmond. Although we do not decide whether the reference to gang affiliation was improper, we do not find that any such reference had such a dispositive impact on the jury's decision. Accordingly, the trial court did not plainly err in failing to grant Thompson's untimely request for a mistrial. Point Three is denied.

### Conclusion

Finding no error, we affirm the judgment of the trial court.

LAWRENCE E. MOONEY, P.J., and PATRICIA L. COHEN, J., concur.