

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD86919 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | June 24, 2025 |
| MARVIN LEWIS HILL, JR., | ) | |
| | ) | |
| Appellant. | ) | |

### Appeal from the Circuit Court of Johnson County, Missouri
### The Honorable Stacey Lett, Judge

**Before Division One:** Karen King Mitchell, Presiding Judge,
Lisa White Hardwick, Judge, and Mark D. Pfeiffer, Judge

Marvin Hill, Jr., appeals, following a jury trial, his convictions of murder in the

second degree, § 565.021,[1] armed criminal action, § 571.015, endangering the welfare of

a child in the first degree, § 568.045, and unlawful use of a weapon, § 571.030, for which

he was sentenced to a total of fifteen years' imprisonment. Hill raises two points on

appeal. First, he asserts the trial court erred in denying his motion for judgment of

acquittal at the close of all the evidence on the child-endangerment charge because there

was insufficient evidence that his actions created a substantial risk to a child. Second,

---

[1] All statutory references are to the Revised Statutes of Missouri, Supp. 2019.

Hill argues the trial court plainly erred by failing to instruct the jury on all theories of justification supported by the evidence. Finding no error, plain or otherwise, we affirm.

## Background[2]

On February 7, 2022, the Johnson County Prosecuting Attorney issued an eleven-count felony information charging Hill with, among other things, second-degree murder, armed criminal action, first-degree child endangerment, and unlawful use of a weapon, in connection with an incident that occurred on March 7, 2020, in Warrensburg, Missouri. The case was tried November 14-16, 2023. In the light most favorable to the verdicts, the following evidence was adduced at trial.

In the early morning hours of March 7, 2020, Victim banged on the door of Hill's apartment and said, "You put your hands on my sister. Why don't you come out and fight me?" Hill recognized Victim by his voice as the brother of Hill's ex-girlfriend, whom Hill had admittedly hit a few times. Through the door, Hill responded, "If I open this door, you're not going to like it." Victim continued to bang on the door, so Hill opened it and shot at Victim twelve times while saying, "Didn't I tell you to stop f***ing with me?"

After the shooting, Hill left the scene, placed the gun in some bushes, and turned himself in to the Warrensburg Police Department. Hill told officers where to find the

---

[2] "On appeal, '[t]he evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict.'" *State v. Gonsalez*, 619 S.W.3d 559, 562 n.1 (Mo. App. W.D. 2021) (quoting *State v. Stewart*, 560 S.W.3d 531, 533 (Mo. banc 2018)).

gun, which they retrieved. The gun had one round in the chamber and an empty magazine that could hold twelve bullets.

After waiving his *Miranda* rights, Hill told police that Victim had previously tried to fight Hill and had been messing with him following a dispute between Hill and Victim's sister. Hill said he shot Victim after Victim stepped into Hill's apartment and tried, but failed, to punch Hill. Victim was found on the floor just inside Hill's apartment; Victim's feet were on the threshold of the apartment.

The police found twelve spent cartridge casings as well as spent bullets and bullet fragments inside Hill's one-bedroom apartment. The police also found two bullet holes in a wall inside Hill's apartment and three bullet holes in the exterior of the apartment across the hall. A Missouri State Highway Patrol firearms examiner tested a bullet retrieved at the scene and confirmed that Hill's gun fired the bullet. There were no signs of forced entry into Hill's apartment, no signs of a struggle in the apartment, and no weapon found on Victim.

The Johnson County coroner pronounced Victim dead at the scene, and Victim's body was transported to the Johnson County morgue for autopsy. The medical examiner determined that Victim died as a result of multiple gunshot wounds. According to the medical examiner, none of the gunshots were at close range, meaning the gun was at least three feet from Victim when it was fired.

Police obtained a search warrant to draw Hill's blood. The toxicology report showed that he had THC (tetrahydrocannabinol) in his system.

Hill's friend was in Hill's bedroom at the time of the shooting. Friend testified that she heard Victim banging on the door to Hill's apartment then the door being opened calmly. Friend also testified that Hill should have just refused to open the door to Victim. Before hearing gunshots, Friend did not feel threatened by Victim, who Friend thought was just trash talking.

Additionally, Hill's cousin, her two-year old daughter (Toddler), and ten-month-old son (Infant) (collectively, the Children) were also in the living room of Hill's apartment at the time of the shooting. Cousin testified that she was on Hill's couch and the Children were on a pallet on the floor; both the couch and the pallet were close to the doorway where the shooting occurred.

Hill moved for a judgment of acquittal on all charges both at the close of the State's evidence and at the close of all the evidence; both motions were denied.

The jury found Hill guilty of second-degree murder, armed criminal action, first-degree child endangerment, and unlawful use of a weapon. Hill moved for a new trial, arguing, among other things, that there was no basis to find him guilty of child endangerment because the evidence showed that he was trying to protect the occupants of his apartment. The court denied Hill's motion for new trial.

The court sentenced Hill to fifteen years' imprisonment for second-degree murder, ten years for armed criminal action, seven years for first-degree child endangerment, and fifteen years for unlawful use of a weapon, with all sentences to run concurrently for an aggregate sentence of fifteen years. This appeal follows. Additional facts will be provided in the analysis, as necessary, to address the points raised on appeal.

**Analysis**

Hill raises two points on appeal.  First, he asserts the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence on the child-endangerment charge because the evidence did not prove beyond a reasonable doubt that his actions created a substantial risk to a child.  Second, Hill argues the trial court plainly erred by failing to include Friend and Cousin in the defense-of-others instruction patterned after MAI-CR 4th 406.08.  We address each point in turn.

## I. There was sufficient evidence to support Hill's conviction for first-degree child endangerment.

Our review of "a challenge to the sufficiency of the evidence supporting a criminal conviction is limited to a determination of whether the trier of fact reasonably could have found the defendant guilty." *State v. Blankenship*, 415 S.W.3d 116, 121 (Mo. banc 2013).  In conducting our review, "[a]ll evidence and inferences favorable to the State are accepted as true, and all evidence and inference[s] to the contrary are rejected." *State v. Porter*, 439 S.W.3d 208, 211 (Mo. banc 2014).  "[T]he relevant question is whether[,] after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979) (emphasis in original), *superseded on other grounds* by 28 U.S.C. § 2254(d).

The information alleged that Hill had committed the offense of child endangerment "by shooting a man with [Infant] in the room."  We "will review [Hill's sufficiency-of-the-evidence] claim based upon how the crime was charged." *State v.*

5

*Gonsalez*, 619 S.W.3d 559, 565 (Mo. App. W.D. 2021) (quoting *State v. Zetina-Torres*, 482 S.W.3d 801, 809 (Mo. banc 2016)).

A person commits the offense of first-degree child endangerment "if he . . . [k]nowingly acts in a manner that creates a substantial risk to the life, body, or health of a child less than seventeen years of age." § 568.045.1(1). Hill does not challenge that he acted knowingly or that Infant was under the age of seventeen at the time of the shooting. Thus, the only issue raised in Point I is whether Hill created a substantial risk to Infant's life, body, or health.

For purposes of § 568.045, "'[s]ubstantial' means 'not seeming or imaginary: not illusive,' and 'risk' means 'the possibility of loss, injury, disadvantage or destruction.'" *State v. Shoemaker*, 675 S.W.3d 672, 678 (Mo. App. E.D. 2023) (quoting *State v. Rinehart*, 383 S.W.3d 95, 101 (Mo. App. W.D. 2012)). "Health, as used in [§] 568.045.1(1), includes a child's physical, mental, emotional, or psychological condition." *Id.* (quoting *Harding v. State*, 613 S.W.3d 522, 532 (Mo. App. E.D. 2020)). "[N]o injury or harm need result; a substantial risk may exist even though the risk does not materialize into actual harm." *State v. Todd*, 183 S.W.3d 273, 278 (Mo. App. W.D. 2005). "The State must allege and prove the defendant's *conduct* giving rise to the risk, but the fact finder must determine whether that conduct created a substantial risk to a child." *Id.* at 277 (emphasis in original).

Hill's insufficient evidence argument relies on two cases—*State v. Gonsalez* and *State v. Welch*—where the courts affirmed child-endangerment convictions but which Hill argues are distinguishable on the facts. In *Gonsalez*, the evidence showed Gonsalez

6

fired his gun "haphazardly" during a struggle in the upstairs hallway of his parents' duplex while his son was in an upstairs bedroom. *Gonsalez*, 619 S.W.3d at 566-67. There also was evidence that the gunshot occurred in close quarters and the home's construction was not substantial because the "bullet was able to travel through the closet door, through a glass vase containing a wax candle, and through the wall of the closet into a neighboring bathroom." *Id.* at 567. The court concluded, "[g]iven the discharge of a firearm during a struggle; in the narrow confines of an upstairs hallway, in a home with insubstantial walls and doors, with [Gonsalez's son] nearby, a jury could reasonably infer that the discharge of the gun in the upstairs hallway created a substantial risk to [Gonsalez's son]." *Id.*

In *Welch*, the court affirmed child-endangerment convictions under similar circumstances. While intoxicated, Welch followed his girlfriend around the mobile home they shared with eight children, waving a gun and pointing it at his girlfriend while yelling that he was going to kill her. *State v. Welch*, 600 S.W.3d 796, 802-03 (Mo. App. E.D. 2020). Welch eventually went into a bathroom where his friend was showering; the two struggled over the gun, which Welch fired three times. *Id.* at 803-04. Two of the shots pierced a wall of the mobile home. *Id.* at 804. The court affirmed Welch's child-endangerment conviction as to the five youngest children who had remained in a bedroom during the incident. *Id.* at 814. The court explained,

> Although the bullets did not travel into the bedroom where the five youngest children were located, in a shared bedroom on the other end of the trailer, . . . the jury still could have reasonably found that [Welch] created a substantial risk to the life, body, or health of those children. Stray bullets traveling through walls in close quarters such as this mobile home . . . and

7

firing shots while struggling and drunk were evidence enough of a risk of injury, both physical and emotional.

*Id.*

While some facts in *Gonsalez* and *Welch* differ from those in the present case, we disagree with Hill that *Gonsalez* and *Welch* require us to reverse Hill's child-endangerment conviction. Like the incidents underlying *Gonsalez* and *Welch*, the shooting at issue here took place in close quarters but, unlike the children in *Gonsalez* and *Welch*, Infant was in the room and located next to the door when Hill opened it and shot at Victim twelve times. Victim was standing on the threshold of the apartment and fell forward into the apartment. None of the gunshots were close range, meaning that Hill was standing at least three feet inside his apartment when he fired his gun. Aside from the bullets that struck Victim and remained in his body, officers observed five bullet holes—two in walls inside Hill's apartment. From evidence of the bullets' trajectories and Infant's close proximity to the gunfire, the jury could reasonably infer that Hill created a substantial risk to Infant's life, body, or health.

The trial court did not err in denying Hill's motion for judgment of acquittal for first-degree child endangerment.

Point I is denied.

## II. Hill's claim of instructional error was not preserved for appellate review.

In his second point, Hill argues the trial court plainly erred by failing to include Friend and Cousin in the defense-of-others instruction given by the trial court.

8

Hill submitted Instruction No. 19, a defense-of-others instruction patterned on MAI-CR 4th 406.08, and the court instructed the jury accordingly. Instruction No. 19 stated:

> One of the issues in this case is whether the use of deadly force by [Hill] against [Victim] was lawful. On the issue of defense of another person in this case, you are instructed as follows:
>
> In this state the use of physical force, including the use of deadly force, to defend another person is lawful in certain situations.
>
> In order for a person to lawfully use physical force in defense of another person, he must reasonably believe that physical force is necessary to defend the person he is trying to defend from what he reasonably believes to be the use or imminent use of unlawful force and he can only use physical force to the extent that he reasonably believes is necessary to defend the other person.
>
> But a person is not permitted to use deadly force unless he reasonably believes the use of deadly force is necessary to protect the other person against death or serious physical injury.
>
> A person is not required to retreat before resorting to the use of physical force to defend another person if he is lawfully remaining in a dwelling on private property leased by the person.
>
> The state has the burden of proving beyond a reasonable doubt that [Hill] did not act in lawful defense of [the Children]. Unless you find beyond a reasonable doubt that [Hill] did not act in lawful defense of [the Children], you must find the defendant not guilty.
>
> If any threats against [Hill] were made by [Victim] and were known by or had been communicated to [Hill], you may consider this evidence in determining whether [Hill] reasonably believed that the use of physical force was necessary to defend himself from what he reasonably believed to be the use or imminent use of unlawful force by [Victim].
>
> You, however, should consider all of the evidence in the case in determining whether [Hill] acted in lawful self defense.

9

On appeal, Hill contends that, because he injected defense of others into the case and there was substantial evidence that he acted in defense of Friend and Cousin, as well as the Children, the trial court committed reversible error, under plain error review, by failing to submit a defense-of-others instruction that included Friend and Cousin.

"If a party fails to lodge a specific and timely objection at trial and in the motion for new trial, the claimed instructional error is not preserved for review." *State v. Garoutte*, 694 S.W.3d 624, 627 (Mo. App. W.D. 2024) (quoting *State v. Kerksiek*, 670 S.W.3d 32, 41 (Mo. App. W.D. 2023)). Because Hill offered Instruction No. 19 and, thus, did not object to it, his claim of instructional error was not preserved for appeal. Accordingly, Hill requests plain error review of the allegedly inaccurate instruction. "[P]lain errors affecting substantial rights may be considered in the discretion of the court . . . when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *Id.* (quoting Rule 30.20).

"[F]ailure of a trial court to offer a [defense-of-others] instruction where the defendant has carried the burden of injecting the issue may . . . constitute plain error requiring reversal." *State v. Thompson*, 401 S.W.3d 581, 585 (Mo. App. E.D. 2013). "However, an exception to the availability of plain error review of instructional error exists in cases where a flawed [defense-of-others] instruction was given, but the flawed instruction was offered by the party challenging the instruction on appeal." *Id.* "In such cases, '[i]t is axiomatic that a defendant may not take advantage of self-invited error or error of his own making,' and the defendant has waived all appellate review related to the inaccuracy of the instruction." *Id.* (quoting *State v. Bolden*, 371 S.W.3d 802, 806 (Mo.

banc 2012)).  "Although plain error review is discretionary, [we] will not use plain error to impose a *sua sponte* duty on the trial court to correct [Hill's] invited error[]."  *Bolden*, 371 S.W.3d at 806; *see also State v. Caves*, 700 S.W.3d 596, 599 (Mo. App. E.D. 2024) (same); *State v. Creviston*, 694 S.W.3d 630, 634 (Mo. App. S.D. 2024) (same).[3]

Thus, the trial court did not commit error, plain or other otherwise, by failing to *sua sponte* amend Hill's defense-of-others instruction to refer to Friend and Cousin.

Point II is denied.

## Conclusion

The trial court did not commit error, plain or otherwise, and the court's judgment is affirmed.

_____
Karen King Mitchell, Presiding Judge

Lisa White Hardwick, Judge, and Mark D. Pfeiffer, Judge, concur.

---

[3] Hill's instructional error argument relies primarily on *State v. Endicott*, 600 S.W.3d 818 (Mo. App. E.D. 2020).  But *Endicott* is distinguishable because there the defendant did not request a defense-of-others instruction, and the trial court did not submit one.  Here, the trial court gave the defense-of-others instruction offered by Hill.

11